IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

| | |
|---|---|
| **HAMID MICHAEL HEJAZI,** | Civ. No. 6:18-cv-02102-AA |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **RISE, INC.,** | |
| Defendant. | |

_____

AIKEN, District Judge:

Defendant Rise, Inc. terminated Plaintiff Hamid Michael Hejazi's employment following Plaintiff's conduct toward Defendant and Defendant's employees. Plaintiff brought this employment action claiming whistleblower retaliation and common law wrongful discharge. Before the Court is Defendant's Motion for Summary Judgment, ECF No. 70, which is GRANTED for the reasons stated below. All other pending motions are DENIED as MOOT.

Page 1 – OPINION AND ORDER

## BACKGROUND

Defendant is a human services network that provides communities in Oregon, Utah, and Arizona with support services for children, adults and families. Defendant's services are aimed at serving individuals with mental health challenges and developmental disabilities. *See* Smith Decl. ¶ 4, ECF No. 71 ("Smith Decl.").

Defendant hired Plaintiff in 2017 at its residential group home in Eugene, Oregon, known as the Sunshine House. In that role, Plaintiff was required to provide support to two minors, H.L., and A.E., both whom have special needs and live at Sunshine House. Plaintiffs' duties including attending to needs such as feeding, participating in activities, and accessing medical treatment.

Plaintiff was required to complete training before he could work with either child one-on-one without being supervised by a fellow staff member. *See* Milburn Decl. ¶ 8, ECF No. 72 ("Milburn Decl."). Those trainings cover first aid, CPR, each child's detailed individual support plan, and related care documents. New employees are required to work several shifts shadowing an experienced staff member. Milburn Decl. ¶ 9.

On November 4, 2017, Plaintiff emailed then Assistant Director of Residential Services, Lea Liberato, to request time off from work. Milburn Decl. ¶ 11, Ex. 2. Liberato granted Plaintiff's request, but informed him that he would miss a training session scheduled for that day. The missed training session was offered only once monthly, and Plaintiff's absence would prevent him from working shifts providing care for A.E., one of the two minors. Milburn Decl. ¶ 13

Defendant scheduled Plaintiff to work a shift caring for H.L. only, since he had not completed the training necessary to care for A.E. Milburn Decl. ¶ 13. Plaintiff apparently had some confusion and dissatisfaction concerning the scheduling, and stated to Liberato that his training had not yet been completed. Milburn Decl., Ex. 2 at 2. Liberato explained that Plaintiff's training to supervise H.L. was completed, but that she could offer more training in following weeks if Plaintiff felt he wasn't ready. *Id.*, Ex. 2 at 3.

Later, Plaintiff contacted Liberato stating that he wanted to discuss "abuse and neglect of clients, training and preparation of staff, scheduling, managerial misconduct, and unlawful discrimination." Milburn Decl. ¶ 15, Ex. 4.

Liberato immediately responded with contact information for LeeRoy Pasquini, then Defendant's human resources manager, and the phone number for the mandatory abuse reporting hotline. *Id*. Plaintiff had received training on his mandatory reporting obligations as well as a copy of Defendant's mandatory reporting policy. Milburn Decl. ¶ 6, Ex. 1. That policy unambiguously requires an employee who suspects abuse to immediately report it to the authorities. Milburn Decl., Ex. 1 at 1. Plaintiff was aware of his mandatory reporting obligations. Tripp. Decl. ¶ 3, ECF No. 74, Ex. 1 at 19, 25 ("Tripp Decl.").

Later that day, Plaintiff e-mailed LeeRoy Pasquini, Defendant's HR Manager, stating that he "would like to file a formal grievance against Lea Liberato for unlawful discrimination and harassment." Milburn Decl. ¶ 16, Ex. 5, at 2. That same evening, Plaintiff located Liberato on Facebook and sent her a private message stating that

"it's nice to put a face to a name," that he was deeply offended by her actions, and that he hoped they could "resolve this soon." Milburn Decl. ¶ 17, Ex. 6. Liberato was disturbed both by the fact that Plaintiff had tracked her down on social media and by the tone of his message. Milburn Decl. ¶ 18. She wrote back to tell Plaintiff not to contact her through social media. *Id*. Liberato also told Pasquini that Plaintiff's Facebook message worried her and that she felt like he might be stalking her or trying to intimidate her. *Id*.

On November 5, before Pasquini had responded to Plaintiff's e-mail from the prior afternoon about Liberato, Plaintiff sent him a follow-up message complaining about scheduling and training practices and alleging that a staff member "frontally hugs and affectionately touches the hair of a client against doctor's notes and instructions," which he asserted constituted "abuse and neglect." Milburn Decl., Ex. 5 at 1. Pasquini responded that he had "read [Plaintiff's] email with great interest" and that he "would be more than happy to meet with [him] to discuss [his] concerns." *Id*. Pasquini and Plaintiff then scheduled a meeting for the following day, November 7, and agreed that Liberato and another manager would attend the meeting. Milburn Decl. ¶ 19.

Plaintiff, Pasquini, Liberato, and a fourth person met at 2:00 p.m. on November 7, 2017 (the "meeting"). *Id*. From the outset of the meeting, Defendant describes Plaintiff's demeanor as strange—that he was "extremely tense and flustered" and acted "agitated" and "erratic." Milburn Decl. ¶¶ 19-20, Ex. 7 at 3. Pasquini started the meeting by explaining that Defendant wanted to discuss how to

get Plaintiff fully trained on A.E.'s care and back on the schedule. Milburn Decl. ¶ 20. Defendant asserts that Plaintiff was argumentative and demanded to be paid for the shifts that he could not work with A.E. because of his lack of training. *Id*. As the conversation moved toward the issue of training, Plaintiff said that another caregiver at the Sunshine House had stroked H.L.'s hair and hugged H.L., behavior which, if true, would have been outside of H.L.'s care plan. Milburn Decl. ¶ 20, Ex. 7. Plaintiff did not identify the other caregiver by name. Milburn Decl. ¶ 20, Ex. 7 at 1. And nobody else had reported concerns about any staff member's interactions with H.L. Milburn Decl. ¶ 20.

Liberato asked Plaintiff whether he had reported these allegations to the mandatory reporting line, and he told her that he had not. Milburn Decl. ¶ 21, Ex. 7 at 1. Liberato informed Plaintiff that the incidents he described were outside of H.L.'s care plan, but that they likely did not rise to the level of "abuse." Milburn Decl. ¶ 21, Ex. 7 at 3. Liberato however encouraged Plaintiff to report what he had allegedly observed if he believed that it was abuse. Milburn Decl. ¶ 21, Ex. 7 at 1.

After that, Plaintiff changed subjects and stated that he desired additional training to care for Defendant's clients and that he felt training was lacking. Milburn Decl. ¶ 22, Ex. 7. As Liberato had stated in her November 4 e-mail to Plaintiff, she was happy to provide him with additional training. Milburn Decl. ¶ 14. Liberato took out Plaintiff's training log relating to H.L.'s care to review the training that he had already completed. Milburn Decl. ¶ 22, Exs. 7, 8.

Page 5 – OPINION AND ORDER

Liberato pointed out that Plaintiff had previously signed and dated the training log to certify that he had "received training" on H.L.'s support plan and that he "kn[e]w how to access the materials listed" on the training log. Milburn Decl. ¶ 22, Ex. 8. At that point, Defendant asserts that Plaintiff became enraged and alleged that the document was fraudulent because Defendant had placed check marks next to the sessions that Plaintiff had completed. Milburn Decl. ¶ 22. Defendant explains that the check marks had been added to the document merely to confirm the training that Plaintiff had already completed. *Id*. Defendant asserts that there was nothing unusual about that, and that there was not any attempt by Defendant to fabricate any information contained in the document. *Id*.

Nevertheless, Defendant maintains that Plaintiff became irate—he lunged at Liberato across a wide table, grabbed the document from Liberato's hands, and tore it in half. Milburn Decl. ¶ 23, Ex. 7. Liberato attests that she was terrified—she thought Plaintiff was going to attack her. *Id*. Pasquini stood up, placed his arm on Plaintiff to guide him away from Liberato, and told Plaintiff to leave. Milburn Decl. ¶ 23, Ex. 7 at 3.

Several staff members reported that Plaintiff loudly spewed profanities as he exited the building, which scared them. Milburn Decl. ¶ 23. Defendant maintains that, not only were Plaintiff's actions inappropriate for the workplace, they were also aggressive, threatening, and frightening. Milburn Decl. ¶ 24.

After the meeting, at about 2:30 PM, Defendant's human resources personnel met and determined that Plaintiff's conduct rendered him unfit to work with

Defendant's highly vulnerable clients. Smith Decl. ¶ 7; Milburn Decl. ¶ 26. The following day, Defendant informed Plaintiff that his employment was terminated. At the time of termination, Plaintiff had completed 49 hours of work, all of which were training-related. Milburn Decl. ¶ 27.

When Plaintiff left the meeting, he had emailed Pasquini and Liberato stating that he had "filed [a] mandatory abuse report." Milburn Decl. ¶ 30, Ex. 10. Defendant maintains that, by this time, it had already decided to terminate Plaintiff's employment, due to his threatening, aggressive, and frightening conduct earlier that afternoon. Smith Decl. ¶ 7; Milburn Decl. ¶ 30. Plaintiff had not made any prior reports of abuse to the authorities. Tripp Decl., Ex. 1 at 19, 25. And Defendant contends that it did not know if Plaintiff had in-fact reported the alleged abuse to the appropriate authorities at this time. Smith Decl. ¶ 7; Milburn Decl. ¶ 30.

Liberato called H.L.'s case manager and the child abuse reporting line to pass on Plaintiff's purported concerns. Milburn Decl. ¶ 31, Ex. 11. The State of Oregon investigated Liberato's report, and Liberato later learned from H.L.'s case manager that the State determined that Plaintiff's allegations of abuse were unsubstantiated. Milburn Decl. ¶ 31. Plaintiff later admitted that he "was not sure that the touching [of H.L.] . . . was actually abuse" and that he "had no reason to believe that the touching was itself abuse." Tripp Decl., Ex. 1 at 9, 39, 40-42.

## SUMMARY JUDGMENT STANDARD

Under Federal Rule of Civil Procedure 56, a party is entitled to summary judgment if the "movant shows that there is no genuine dispute as to any material

fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court views the evidence in the light most favorable to the non-movant and draws all reasonable inferences in the non-movant's favor. *Clicks Billiards, Inc. v. Sixshooters, Inc.*, 251 F.3d 1252, 1257 (9th Cir. 2001).

Although "[c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ... ruling on a motion for summary judgment," the "mere existence of a scintilla of evidence in support of the plaintiff's position [is] insufficient." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252, 255 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (internal quotation marks and citation omitted).

## DISCUSSION

Plaintiff alleges that Defendant terminated Plaintiff for "raising problems having to do with the mistreatment of children under Defendants care" and that Defendant "disciplined, sanctioned, and berated" Plaintiff for doing so. Compl. at 2, ECF No. 2-1 ("Compl.").

Defendant contends it is entitled to summary judgment on all Plaintiff's claims because Plaintiff cannot establish (1) that he engaged in protected activity, (2) that there was a causal link between his alleged protected activity and the termination of his employment, or (3) that Defendant's legitimate reasons for terminating his employment were pretext for retaliation.

Much of Plaintiff's response relates to his apparent dissatisfaction with Defendant's inability to accommodate Plaintiff's desired shift schedule. Resp. at 3-5, 8, ECF No. 77 ("Resp."). Plaintiff's response is difficult to parse. Among other assertions, he states that Defendant discriminated against him when it "vacated Plaintiff's upcoming training session and all future shifts, demonstrating their frauds." Resp. at 4. Plaintiff maintains that he witnessed what he believed to be inappropriate touching of H.L. and that Defendant "discard[ed]" any records of H.L's abuse." *Id.*

Plaintiff's other statements include that Liberato is "point-blank pretending to be stupid about Plaintiff's explicitly stated mishandled scheduling," and that that Defendant is a "child abusing criminal[,]" which "entrap[s]" its employees. *Id.* Plaintiff also explains that he is engaged in lawsuits against the State of Oregon and Lane County and that he has caused those entities to "look completely ridiculous and barbaric in their administration of government." Resp. at 9. Plaintiff's declaration reiterates his displeasure concerning scheduling and his allegations of the touching of H.L.'s hair and side. Plf.'s Decl. at 3-5, ECF No. 79.

In reply, Defendant contends that Plaintiff's response contains only vague and inflammatory allegations, unsupported by evidence and outside the scope of Plaintiff's Complaint. In Defendant's view, an absence of a genuine issue of material fact persists regarding three essential elements of all of Plaintiff's claims, specifically that (1) there is no evidence that plaintiff engaged in protected activity, (2) there is no evidence of a causal link between any protected activity and the termination of

Plaintiff's employment, and (3) even if Plaintiff could establish a prima facie case of retaliation, there is no evidence that Defendant's decision to terminate his employment was pretextual.

To Defendant's reply, Plaintiff responded that he has proved that the meeting during which he "tore th[e] fraudulently modified training log," was conducted with the purpose of coercing him "into cooperating with child abuse" and for Defendant to establish a pretense for firing him in retaliation for reporting child abuse. Plf.'s Reply at 2, ECF No. 86 ("Plf.'s Reply"). He refers to the emails Defendant has filed as exhibits to its motion for summary judgment as evidence that the meeting was retaliatory in nature and that his requested time off was for religious purposes. *Id.* at 3.

To support his legal challenge to Defendant's motion for summary judgment, Plaintiff maintains that the element of "pretext" is legally established by: (1) the call Pasquini made to Plaintiff to discuss his report about the alleged abuse; (2) the timing of that call; (3) the absence of a business related reason for the meeting; (4) Liberato's "motive" to hide child abuse by "transmut[ing] it into an allegation of wrongful conduct by Plaintiff; and the "set up" of the meeting to see if Plaintiff would "come on board into Defendant's child abuse culture." *Id.* at 6.

In addition to his filed briefing, Plaintiff has inundated the Court with over 25 emails and several phone calls containing threats and other demands, apparently unrelated to this lawsuit. Those communications are not properly before the Court and will not be addressed.

Page 10 – OPINION AND ORDER

I.   **Retaliation Under ORS 659A.199 and 659A.230**

To establish a prima facie case of retaliation under ORS 659A.199 or 659A.230, a "[p]laintiff must show (1) [he] was engaging in a protected activity, (2) [he] suffered an adverse employment decision, and (3) there was a causal link between the protected activity and the adverse employment decision." *Larmanger v. Kaiser Found. Health Plan of the Nw.*, 895 F. Supp. 2d 1033, 1049 (D. Or. 2012) (citations and internal quotation marks omitted) (first alteration in original), *aff'd*, 585 F. App'x 578 (9th Cir. 2014).

"If the plaintiff establishes a prima facie case, the burden shifts to the defendant to rebut the inference of retaliation by offering a legitimate, nondiscriminatory reason for the employee's termination. If the defendant successfully rebuts the inference of retaliation, the burden of production shifts back to the plaintiff to show that the defendant's explanation is merely a pretext for impermissible retaliation." *Id.* at 1049. Here, it is undisputed that Plaintiff was fired. The Court examines the first and third elements of Plaintiff's claim.

A.   *Protected Activity*

Both ORS 659A.199 and 659A.230 require a plaintiff to prove that he had a "good faith" belief that a report alleged to be protected relayed information that was evidence of unlawful activity. Here, Plaintiff appears to allege that he engaged in protected activity when he (1) informed Defendant of a mandatory-abuse report approximately one hour after the meeting, and (2) made internal complaints to

Defendant leading up to and at the beginning of the meeting. Tripp Decl., Ex. 1, at 9, 30, 39, 40-42 (Plaintiff's response to Defendant's second interrogatory).

The Court finds that Plaintiff has not established that he had a good-faith belief that his report related to unlawful conduct or that he made the complaints in good faith. In the context of ORS 659A.199 and 659A.230, a "good faith" belief means a subjective belief that the reported information relates to activity that is actually unlawful. *See, e.g., Hall v. State*, 274 Or. App. 445, 452-53, 366 P.3d 345 (2015). Additionally, "good faith relates to what the employee knew at the time of the report, not to what might be shown later to be reasonable with the benefit of hindsight." *Id*. at 452.

The record demonstrates that Plaintiff's binding admissions belie his assertions that he actually believed this his reports related to unlawful conduct at the time he made them. For example, Plaintiff admitted in his response to Defendant's interrogatories that he "was not sure that the touching [of H.L.] . . . was actually abuse" and that he "had no reason to believe that the touching was itself abuse." Tripp Decl., Ex. 1 at 9, 39, 40-42. Plaintiff further admitted in response to Defendant's requests for admission, that he was "not aware of any state or federal law, rule, or regulation that prohibited Defendant's staff members from hugging or touching the hair of a client. Tripp Decl., Ex. 1 at 19, 25. That admission tracks the exact language of ORS 659A.199. And the admission is binding. Fed. R. Civ. P. 36(b).

The record also demonstrates that Plaintiff cannot establish as a matter of law that he made his report in good faith. Making a report in good faith "means that the

Page 12 – OPINION AND ORDER

plaintiff acted out of good faith concerning the criminal activity rather than out of malice, spite, jealousy, or personal gain." *Hall*, 274 Or. App. at 452 (citation and internal quotation marks omitted).

Here, the evidence concerning the timing of Plaintiff's complaints suggests that he did not make them in good faith. Plaintiff made his complaints regarding his lack of training only after Liberato refused to allow him to work shifts providing care for A.E. (because he had not completed mandatory training related to A.E.'s care). Milburn Decl., Ex. 2 at 1-2.

The record, including Plaintiff's briefing, shows that Plaintiff became agitated concerning his scheduling, and that agitation with scheduling persists throughout his representations to the Court. Plaintiff has not provided evidence to rebut Defendant's records that show that Plaintiff was motivated by his feelings about his schedule, rather a good-faith report of suspected unlawful activity. And Plaintiff made the report regarding H.L. only after Defendant twice instructed him to do so and after Plaintiff had engaged in the conduct Defendant found to be undesirable at the meeting. Tripp Decl., Ex. 1 at 19, 25; Milburn Decl. ¶¶ 15, 21, Exs. 4, 7. This reflects that Plaintiff was motivated by something other than good faith.

Accordingly, no reasonable trier of fact could find that the reports Plaintiff cites as protected activity were good-faith reports of information believed to be evidence of unlawful conduct.

### B. *Causal Link Between Protected Activity and Termination*

Defendant maintains that Plaintiff cannot establish the causation element of his retaliation claims for two reasons: (1) even assuming that a causal link could otherwise be inferred by the timing of Plaintiff's dismissal, Plaintiff's intervening conduct at the meeting severed any such link, and (2) Plaintiff cannot establish retaliation based on alleged protected activity that occurred after the decision to terminate his employment. MSJ at 17.

Here, Plaintiff made his internal complaints to Defendant about training and his coworker's interactions with H.L. on November 4 and 5 and at the beginning of the meeting and Plaintiff's intervening conduct occurred at the end of the meeting.

An intervening event can sever any causal connection between a protected activity and an adverse employment action. *See, e.g., Mink v. Marion Cnty. Juvenile Dep't*, No. 08-6298-AA, 2009 WL 5173513, at *8 (D. Or. Dec. 18, 2009). The plaintiff-employee in *Mink* claimed that his employer had discharged him in retaliation for requesting an accommodation under the Americans with Disabilities Act. *Id*. But the undisputed evidence reflected that the employee had failed a drug test after he requested the accommodation and before termination. *Id*. The Court therefore granted summary judgment in favor of the defendant-employer, holding that "the intervening event of plaintiff's positive drug test destroy[ed] any thread of [causal] connection that may have survived summary judgment." *Id*.

Here, the evidence is that Plaintiff's conduct at the end of the meeting severed any purported causal link between his complaints leading up to and at the beginning of the meeting and the subsequent termination of his employment.

Page 14 – OPINION AND ORDER

Further, Defendant's personnel found Plaintiff's actions at the end of the meeting to be terrifying and completely unacceptable. Milburn Decl. ¶¶ 23-24, Ex. 7. Defendant felt compelled to file a police report about Plaintiff and to instruct staff to call 911 if Plaintiff showed up at the workplace and refused to leave. Milburn Decl. ¶ 29.

Evidence that a decision-maker is aware of an employee's protected activity is required to support a claim of retaliation. *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197-98 (9th Cir. 2003) (citation omitted). While Plaintiff had complained that he saw hugging and toucing of H.L.'s hair, the record shows that neither Liberato, Pasquini, nor Smith were aware of Plaintiff's mandatory report until after the termination decision had already been made. Smith Decl. ¶ 7; Milburn Decl. ¶ 30.

Finally, Plaintiff argues that Defendant's firing him for his behavior at the meeting was a pretext for his wrongful termination. Plaintiff does not and cannot dispute that Defendant had valid employment concerns resulting from Plaintiff's conduct at the meeting. *See* Milburn Decl. ¶¶ 23-24, 26, 28-29; Smith Decl. ¶¶ 6-7. Instead, Plaintiff appears to rely solely on temporal proximity to establish pretext. But "[t]emporal proximity alone is insufficient to create evidence of pretext." *Huitt v. Optum Health Servs.*, 216 F. Supp. 3d 1179, 1187 (D. Or. 2016) (citing *Ventura v. Johnson Controls, Inc.,* Nos. 08-CV-1318-PK, 2010 WL 3767882, at *10 (D. Or. Sept. 16, 2010*)); Hashimoto v. Dalton*, 118 F.3d 671, 680 (9th Cir. 1997) (holding that although temporal proximity may suffice to support a 'minimal prima facie case of

retaliation,' it is insufficient to carry the plaintiff's burden "of establishing a triable issue of fact on the ultimate question" of retaliation). The record here does not create a genuine issue of material fact regarding pretext. Consequently, no reasonable trier of fact could find a causal link between plaintiff's mandatory abuse report and the termination of his employment.

## II.   Whistleblower Discrimination Claim

Plaintiff's aiding and abetting claim appears to be predicated on the same allegations as his retaliation claims discussed in Section I of the Discussion. The aiding and abetting claim therefore fails for the same reasons that the retaliation claims fail. Additionally, Defendant is the sole defending party in this case. Plaintiff thus asserts his retaliation claims and his claim that Defendant was aiding and abetting itself. *See* Compl., ECF No. 3-1. But as a matter of law, it is not "possible to aid and abet oneself." *Peters v. Betaseed, Inc.*, No. 6:11-CV-06308-AA, 2012 WL 5503617, at *7 (D. Or. Nov. 9, 2012); *accord*, e.g., *Zweizig v. Nw. Direct Teleservices, Inc.*, No. 3:15-CV-02401-HZ, 2017 WL 3725184, at *7 (D. Or. Aug. 29, 2017) ("[A] person cannot aid and abet himself."). Defendant has established that it is entitled to summary judgment on Plaintiff's whistleblower claim.

## III.   Wrongful Discharge

Plaintiff's wrongful discharge claim is also predicated on the same allegations as his retaliation claim, discussed in Section I of the Discussion. Therefore, like his aiding and abetting claim, Plaintiff's wrongful discharge claim fails for the same reasons that his retaliation claim fails. Plaintiff's wrongful discharge claim also fails

as a matter of law for the additional reason that it is precluded by the availability of adequate statutory remedies. *E.g., Huitt*, 216 F. Supp. 3d at 1195-97 (D. Or. 2016) (holding that adequate statutory remedies bar wrongful termination claims based on conduct that also underlies claimed violations of ORS 659A.199 and ORS 659A.230).

Accordingly, the Court finds that Defendant is entitled to summary judgment on Plaintiff's wrongful discharge claim.

## CONCLUSION

Defendant produced evidence of its lawful reasons for terminating Plaintiff, following Plaintiff's act of locating and messaging his supervisor on social media, Plaintiff's communications with his supervisors, and his disruptive behavior during the meeting planned for Plaintiff's benefit. The undisputed material facts establish that Defendant is entitled to summary judgment as a matter of law. Accordingly, Defendant's Motion for Summary Judgment, ECF No 70, is GRANTED. All other pending motions are DENIED as moot. This case is DISMISSED and judgment shall be entered accordingly.

IT IS SO ORDERED.

Dated this __5th__ of April 2023.

_____/s/Ann Aiken_____

Ann Aiken
United States District Judge